Number 222859, Nostalgic Partners v. Office of the Commissioner. Thank you. Thank you, Mr. Silbert, whenever you're ready. Thank you, Your Honor. Good morning, and may it please the Court, I'm Greg Silbert for the Minor League Teams. I think we all know where we're going to wind up today, but how we get there is important. What do you mean? Where do you think we're going to wind up? Well, I think, Your Honor, I think this Court is going to hold that the antitrust baseball exemption bars our claim because we acknowledge that it does and that this Court is bound to apply it. But the antitrust exemption is the only thing that bars our claim. That exemption, as the United States government said in this very case, serves no public policy interests and it benefits only one party. I understand why you want to talk about it, and I understand potentially why the other side wants to talk about it. Why would we want to talk about it? Well, Your Honor, we acknowledge that the Court is bound to apply it, but if you agree with us that it's time for... or historic accident of the antitrust exemption, other than saying what everybody agrees, which is this case is to be dismissed in light of binding Supreme Court and Second Circuit precedent and the longstanding exemption, what is the judicial interest of the Court in engaging in any further discussion either about the exemption or about the underlying merits? So we don't think that you need to address either of those things, Your Honor. If you do agree with us that it's time for the Supreme Court to take a fresh look at the exemption, then we certainly think that you could say that, and you would not be the first Court to do so. In fact, the Florida Supreme Court in Butterworth said the exact same thing. We don't think you need to go any further than that. So as to the other merits issues that our friends at Major League Baseball have addressed in their brief... So you want us to write your short petition, and they want us to write their brief in opposition. But it still makes me wonder what, from the Court's perspective, in light of how clear, how well-tread, how the things you're saying, true or not true, have been said by courts and any other number of people, it's hard for me to see what value as a judicial matter comes from saying anything other than affirmed goodbye, good luck. Well, Your Honor, obviously this Court has to apply the doctrine. We acknowledge that. It is certainly not beyond the competence of the Court or, we think, the interest of the Court to comment on the exemption, if that's something that you see fit to do. Obviously, you don't have to do that. It will not change the result. We acknowledge that. As you say, we want you to write our short petition. Yeah, we want not our short petition, but we would like you to say something that we would point to in a short petition that courts agree with us that the exemption needs a fresh look. Maybe you can address mootness, then. I'm sorry, Your Honor? Maybe you can address mootness. There is no mootness, Your Honor. As the letter, the 28-J letter that Major League Baseball submitted acknowledges, Major League Baseball is not asserting any antitrust immunity from the CBA, so at most what they've said is there is an additional agreement that incorporates what we allege to be an antitrust violation and what clearly would be an antitrust violation if not for the exemption. But might it moot one of the forms of relief sought, one of the injunctive relief? And if so, is that moot in an Article III sense such that we might have to address that? It is not moot in any sense, Your Honor. The injunctive relief that we seek, which is at page 40 of the record, is an order that would require MLB to permit each individual club to compete against other individual clubs and decide for itself how many teams to affiliate with and which team to affiliate with. So that request for injunctive relief is alive and well, notwithstanding that MLB has incorporated an anti-competitive act in another agreement. The fact that anti-competitive output restrictions are contained in not just an MLB policy but a private agreement does not moot our claim for injunctive relief. That's an argument that it doesn't moot it. I suppose it still raises the question of do we need to address that in an Article III sense in any way? Well, I don't see how there would be Article III mootness in any sense, Your Honor. We are claiming both damages, which even MLB does not claim is mooted by the CBA, and injunctive relief that would still be relevant notwithstanding any term of any private agreement, including the CBA, unless that CBA conferred antitrust immunity on MLB but MLB concedes in its letter that it doesn't. So I don't think there's any mootness issue that's before you. And beyond that, as we pointed out, the 28J letter that MLB submitted includes a piece of evidence, which is, we think, not properly before you. But even if you consider it, we don't believe it presents any ground for mootness. Now, in a minute or two, my good friend, Mr. Wall, he's going to be standing at this podium. He's going to ask you to rule against us on grounds other than the exemption. As you've said, Judge Nathan, there's no reason that you need to reach those grounds at all. We don't think it's necessary to do so. But if you do decide to reach them, you should hold, like the district court, that we have antitrust standing and that we have asserted an antitrust claim. With respect to standing, we easily satisfy each step of the gap analysis as applied in GATT and, again, by this court in IQ Dental. As to the first step, the anticompetitive conduct that we've alleged is a horizontal agreement to restrict output and a group boycott. Those are both classic instances of anticompetitive behavior. The harm to us is exclusion from a market. Again, a classic antitrust injury. And all we need to show after that is causation. Do you think where it falls on the GATT IQ Dental line does depend on what remedy you seek? No, Your Honor. We think that IQ Dental is the most relevant case here. And what this court held in IQ Dental is that it makes no difference how a plaintiff entered the market or whether a plaintiff previously benefited from an antitrust violation as long as that plaintiff is not continuing to benefit from the antitrust violation. And as this court held in Vogo, even a current member of a cartel has standing to assert antitrust claims against the cartel. At most, what MLB said is that we were previously a member or previously benefited from what it says was a prior antitrust violation, but we're not asking you to bring that antitrust violation back. Nobody thinks that the old system is coming back. What we say is that each individual team should have to compete against other individual teams and decide for itself how many minor league affiliates to have and which teams to affiliate with. Thank you. Thank you. Mr. Wong. Judge Park, and may it please the court. Judge Nathan, I'd like to start with your first question. Our briefing on the exemption was purely defensive. In the opening brief, the reply brief, the 28-J letter, they have again and again said to the court. I mean, it's defensive because you got the district court to opine on something it didn't need to, right? Well, not on the exemption. It had to opine on the exemption. They wanted you to criticize the exemption. The district court didn't do that. And we thought it was very important to say what the Ninth Circuit said in San Jose, which is the case for the exemption is stronger here than it was in Toulson and Flood because Congress, in the intervening years in the Curt Flood Act, specifically and expressly said in the text, we're not touching the exemption for the minor leagues. So you've got statutory stare decisis, but now you don't just have acquiescence like you had before. You have ratification. It seems to us stronger. So we were trying to caution the court away from criticizing the exemption because I think it's a – but I don't think that the same is true for the injury and the merits because the district court decided those issues. They're important. They go to this circuit's law. And typically, if a case came up and you said, well, your claim fails on A, you would often, if not typically, say in the alternative, but it also fails on B or C. That's a traditional thing to do in order to clean up the circuit's law. Otherwise, this district court opinion, if indeed it contains errors, is going to be cited with an affirmed Second Circuit from here on out. Binds no one. Well, it's not that it binds. It's that it stands out there for these propositions, which aren't right with respect to injury and the merits. I think everybody agrees, I think even the plaintiffs do agree, that there is this legal principle that runs through Daniel and GATT and Volvo that if you're trying to get back into what you think was an anti-competitive arrangement, that's not a cognizable injury. You can't make that claim and nobody else can either. But if you're on the outside, like an IQ dental, and you just want to disband the arrangement, you have antitrust injury. They've come to this court and said the latter is what they're saying. That's not the theory of their complaint. If the court looks at their complaint, it's in the JA at pages 9 to 41, but in particular I'd point the court to the antitrust injuries section, which is paragraphs 68 to 73, and paragraphs 117 and 118, where they ask for damages and injunction. That complaint through and through, Judge Nathan, is not we just want an unfettered free market where we can compete with everybody else. It is a complaint about we had it good under the six-tier system, we were harmed when it moved to four tiers, and we want what we had back. We want it through an award of damages, and we want an injunction that unwinds the takeover plan. To your question, it is very much crucial what remedy they seek. In Daniel, the doctors came up here and said we – I understood your calling essentially to say, you know, he said no, but then he said because we're not seeking a remedy that reverts to the old system, so that could be interpreted actually as a yes. So here's what I would say. I think it is crystal clear if the court reads the complaint that it is very much a Daniel or a GATT complaint. Like in Daniel, this court said to the doctors, do you want to get rid of the certification or do you just want the certification too? And they said we want to be a part of the club. We want the certification. And this court said that's no good. Their complaint is very much like that. They have pivoted. Now they say we just want an unfettered free market, a free fall. And they're right. If that were the theory of their complaint, they would have antitrust injury. We're not disputing that. But it would shine a spotlight on the merits problem. They want the district court then to say and enter an injunction ordering that baseball cannot have any limits on its player development system. If the St. Louis Cardinals can sustain ten affiliates and the Royals can only sustain two, so be it, the plaintiffs say. They think it's the job of a court to order that. We cannot find any court that has ever ordered anything like that or ever even treated it as a plausible claim. And the reason is in order to have the joint venture of a sports league, you just have to make certain decisions in order to decide what products you're going to put on the field. How many teams will you have? How many players will be on each team? How will you develop talent? But all the other leagues prosper without this antitrust exemption. NBA's record profits. Oh, so I'm going to separate out two different things, Judge Parker. One is the rationale for the antitrust exemption, which the Supreme Court has said we should leave to Congress. But Congress in the Curt Flood Act did not touch it, and I think in part because baseball has developed a far more geographically diverse and dispersed minor league system than any other professional sport. There are small minor league baseball teams all over America. One doesn't find that in any other sport. But all of that's supposed to be left to Congress, the Supreme Court says. And then the other is, all right, do they have a plausible claim on the merits? And you're right, leagues can structure themselves differently. The NBA has one G League. Everybody gets one affiliate. Baseball has chosen a different system. But their claim is that courts have something to say about that, that it shouldn't be four or six, that a court should step in and say it has to be unlimited under the Sherman Act. And whether one looks at a Rita and Hoven camp or the lower court cases, everybody agrees that that's just not the business of courts. It's not a plausible antitrust claim. Well, wouldn't you be happy to have the Supreme Court clean up all this uncertainty once and for all? Wouldn't you be better off to get some finality with respect to this issue? Judge Parker, there's no doubt that the plaintiffs are going to file a cert petition, right? And the Supreme Court is going to get to decide whether to take it. The question for this court alone- For the third time. For the third time. And look, and not even just the third time, right? Because the Chicago Cubs rooftops case a few years back filed a cert petition, too. I mean, there have been plenty of other cert petitions on this issue, Judge Nathan. But the court's taken it on the merits twice and both times turned away the challengers. They've had a lot of other recent opportunities to do it. They haven't taken it. We'll see if the plaintiffs succeed here. The question is whether this court's just going to pass them along and act as if they have valid claims that they're blocked only by the antitrust exemption. And I guess our point is, quite apart from the antitrust exemption, they don't have a valid claim. They haven't pleaded a valid injury. And even if they had, they don't have a valid claim on the merits. And it seems to me that in most other cases, setting aside the exemption, if someone came up to this court and their claim failed on a bunch of different grounds, this court wouldn't hesitate to say so. And I don't think we ought to treat the baseball exemption any differently. Their claim fails on multiple grounds. If the district court got it wrong, this court should say so. Or at a minimum, it should distance itself from the district court decision and say, we're not addressing and embracing any of that to make clear that it has at the least doubts, if not real skepticism, about whether the district court got it right. To the mootness question, do you understand the issue to be an Article III issue? I don't think it's Article III, Judge Nathan, because they do have a live claim for damages, however they style their injury. So it seems to me that the court still would have to reach the merits of that claim if it decides they have cognizable injury. The way that I think about it is, it makes their merits problem even more obvious. They can't get an injunction now because they haven't challenged the CBA. That's an independent barrier. They glibly say in their 28-J letter, well, you can just order them to amend the CBA. You can't? It's the legal availability of a remedy. So Moak Mall says that's a merits question, not a standing question. That's right. But it's an independent barrier to the injunctive claim, right? It doesn't touch damage. Right. The court can't enter the injunction because we now have a totally independent basis that they haven't challenged for the four-tier system, which is an arm's length contract with the players like the other leagues have. On their damages claim, the reason I think it makes the merits easier is because it's, I mean, it could not be clearer from the complaint that they're not seeking the measure of damages between what they're worth now and what they think they'd be worth in a totally free market where they could try to go get an affiliation. That's a pretty speculative number, and their real-world clients don't want that number. They want the delta between what they used to be worth in the former system and what they say they're worth now, the loss of enterprise value. And that is clearly a GATT injury. There is just no doubt that whatever they say they want about an unrestricted free market, when it comes to dollars and cents, their clients think they were worth X, they're worth Y now, and they want the difference between X and Y. So if we know that the CBA takes the injunctive claim off the table and we're really focused on damages, it couldn't be clearer they've got an antitrust injury problem. Thank you. Thank you. Thank you, Your Honor. Three points. First, as to the injunctive relief we seek, I will read it to you from page 40 of the record. We seek in order by the court requiring, permitting the MLB clubs, quote, to compete with each other to make their own decisions as to with which MILB teams, that is minor league teams, and how many to affiliate. So we are expressly asking the court to order a free market where the teams compete against each other and not to return to the prior system, as my friend says. With respect to the damages claim, there's no question that our teams are worth less when they are unable to compete for affiliations than when they are able to compete for affiliations. Now, we believe and we allege that in a competitive market we would have affiliations because of the competitive merit of the team. If it turns out we wouldn't, then that goes to the amount of our damages, not to the availability of damages overall, and that is a question that you would need a fact record to decide. Mr. Wall also brought up the Curt Flood Act. The Curt Flood Act says no court shall rely on the enactment of this section, that is the act, to change the application of the antitrust laws to, among other things, minor league baseball. What MLB is telling you to do is change the application of the antitrust laws to minor league baseball based on the application, based on the enactment of the Curt Flood Act. So that is directly contrary to the language of the statute itself. Now, with respect to other leagues and whether it's appropriate... The Curt Flood, it's just neutral on the question of Congress' acquiescence or otherwise in maintaining the exemption or that it helps your argument in some way? The Curt Flood Act is neutral, Judge Nathan. It changes nothing with respect to the applicability of the exemption to the subjects that are not addressed by the Curt Flood Act, which includes the subject matter of this case. So Curt Flood Act has no effect that is relevant here. With respect to whether league sports have to manage the number of minor league affiliates, as Mr. Wall acknowledged, the minor league system in baseball is very different than minor league systems in other sports. There's not a fact record before you on that now. But I think that the most relevant example to baseball as a league sport is baseball itself. And as we have pointed out in our briefs in other periods, major league baseball had many, many, sometimes dozens of minor league affiliate teams. That system worked just fine. And we are confident that when we develop a fact record on this issue, the evidence will show that many major league baseball teams today would prefer to have more minor league affiliates than they do. And the only reason that they're not allowed to have those affiliates is because the MLB cartel will not allow them to. Before you sit down, let me be sure I'm clear in light of the remarks that Mr. Wall made about your position on GAN. I'm sorry. Your position on GAT. On GAT? So in GAT, the alleged antitrust violation was a bid rigging scheme, and the plaintiff did not pay the rig prices. And what the court held is other plaintiffs or potential plaintiffs, the one who actually paid the rig prices who are harmed by the antitrust violation, are the correct plaintiffs to bring the action. In this case, the antitrust violation is an output restriction and a group boycott, and we are prevented from competing in the market because of that output restriction and group boycott. So in GAT and in the city of Oakland case that MLB also relies on, the points the court made is there are other plaintiffs that can bring these actions. What our friends at MLB never tell us is if we don't have standing to bring this claim, then who does have standing to bring it? And I believe that the answer under their theory is nobody. Nobody could bring it. And if no one can bring the claim, then it's not a standing doctrine. It's an immunity doctrine. And our point, of course, is that MLB has too much antitrust immunity now, so the last thing you should do is give it even more. Thank you.